Gillian Wade, Esq. (State Bar No. 229124)
gwade@milsteinadelman.com
Sara D. Avila (State Bar. No. 263213)
savila@milsteinadelman.com
**MILSTEIN ADELMAN, LLP**
10250 Constellation Boulevard, 14th Floor
Los Angeles, California 90067
Telephone: (310) 396-9600
Facsimile: (310) 396-9635

Allan Kanner, Esq. (State Bar No. 109152)
a.kanner@kanner-law.com
Conlee Whiteley, Esq. (*Pro Hac Vice*)
c.whiteley@kanner-law.com
Cynthia St. Amant, Esq. (*Pro Hac Vice*)
c.stamant@kanner-law.com
**KANNER & WHITELEY, L.L.C.**
701 Camp Street
New Orleans, LA 70130
Telephone: (504) 524-5777
Facsimile: (504) 524-5763

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

DAVID SANCHEZ, individually and on behalf of all others similarly situated,

Plaintiff,

v.

DOLGENCORP, LLC, (d/b/a DOLLAR GENERAL, CORPORATION), a Kentucky limited liability company,

Defendant.

Case No. 2:15-cv-9730

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

1. Violations of the Consumer Legal Remedies Act, *California Civil Code* §1750, *et seq.*
2. Violations of False and Misleading Advertising Law, *California Business and Professions Code* §17500, *et seq.*
3. Violations of Unfair Competition Law, *California Business and Professions Code* §17200, *et seq.* (unfair and fraudulent prongs)
4. Violations of Unfair Competition Law, *California Business and Professions Code* §17200, *et seq.* (unlawful conduct prong)

5. Violations of the Song-Beverly Consumer Warranty Act, *California Civil Code* §§1792 & 1791.1(a)
6. Violations of the Song-Beverly Consumer Warranty Act, *California Civil Code* §§1792.1 & 1791.1(b)
7. Breach of Implied Warranty of Merchantability
8. Breach of Implied Warranty of Fitness for a Particular Purpose

Plaintiff David Sanchez ("Plaintiff"), individually and on behalf of all others similarly situated, makes the following allegations based on his personal knowledge of his own acts and, otherwise, upon information and belief based on investigation of counsel.

**NATURE AND SUMMARY OF THE ACTION**

1. Plaintiff, by and through undersigned counsel, brings this action both on his own behalf and on behalf of the class and sub-class defined below, comprised of all individuals similarly situated nationwide and within the State of California, to redress the unlawful and deceptive practices employed by Defendant, DOLGENCORP, LLC, (d/b/a Dollar General, Corporation), (hereinafter "Dollar General" or "Defendant") in connection with its marketing and sale of its company-branded motor oil sold in its stores.

2. Dollar General sells an entire line of company-branded motor oils (labeled "DG") that are obsolete and potentially harmful to its customers' automobiles by using deceptive and misleading sales and marketing tactics including: (a) the positioning of its DG line of obsolete motor oils immediately adjacent to the more expensive standard- and premium-quality motor oils manufactured by its competitors and (b) failing to adequately warn its customers that its DG motor oil is unsuitable for use by the vast majority, if not all, of its customers.

3. Dollar General's unlawful and deceptive business practices violate California's Unfair Competition Law, *Business & Professions Code* §17200, *et seq.* ("UCL"); California's False Advertising Law, *Business & Professions Code* §17500, et seq. ("FAL"); California's Consumer Legal Remedies Act, *Civil Code* §1750, *et seq.* ("CLRA"); the Song-Beverly Consumer Warranty Act, *Civil Code* §§ 1792 and 1791, *et seq.;* and the contractual rights of consumers.

**JURISDICTION AND VENUE**

4. Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. §§1332(d), because members of the proposed Class and Sub-Class are citizens of States different from Defendant's home states of Kentucky and Tennessee, there are more than 100 Class Members, and the amount-in-controversy exceeds $5,000,000 exclusive of interest and costs.

5. This Court has jurisdiction over Defendant because Defendant is a foreign corporation or association authorized to do business in California and registered

with the California Secretary of State, does sufficient business in California, and has sufficient minimum contacts with California or otherwise intentionally avails itself of the laws and markets of California, through the promotion, sale, marketing and distribution of its merchandise in California, to render the exercise of jurisdiction by the California courts permissible.

6. Venue is proper in this District under 28 U.S.C. §1391(b) and (c) because Defendant's improper conduct alleged in this complaint occurred in, was directed from, and/or emanated from this judicial district, because Defendant has caused harm to Class Members residing in this district, and/or because the Defendant is subject to personal jurisdiction in this district.

7. In addition, Defendant operates over 100 stores in California and has received substantial compensation from California consumers who purchase goods from Defendant.

## **PARTIES**

8. Plaintiff David Sanchez is an individual adult resident of Norwalk in Los Angeles County, California and is a member of the Class and Sub-Class alleged herein.

9. Plaintiff purchased Dollar General's DG SAE 10W-30 motor oil from Dollar General's store in Norwalk, California, on three separate occasions in 2014 for his 1999 Honda Accord.

10.   Defendant DOLGENCORP, LLC, d/b/a Dollar General Corporation, is incorporated under the laws of the State of Kentucky, with its headquarters located at 100 Mission Ridge, Goodlettsville, Tennessee. Dollar General maintains over 100 stores throughout the state of California.

11.   At all relevant times, Defendant produced, marketed, distributed and sold its obsolete DG-branded motor oil in its stores throughout the United States, including in the State of California, utilizing deceptive and misleading marketing and sales practices to induce Plaintiff and Class Members into purchasing its obsolete motor oil for use in their modern-day vehicles knowing that its motor oil is obsolete and likely to cause damage to any such vehicle.

## FACTUAL ALLEGATIONS

12.   Dollar General operates a chain of variety stores headquartered in Goodlettsville, Tennessee.   As of January 2015, Dollar General operated over 12,198 stores in 43 states, with close to 150 stores located in the State of California.

13.   Dollar General is a discount retailer focused on low and fixed income consumers in small markets.  Dollar General's business model includes locating its stores in rural, suburban communities, and in its more densely populated markets, Dollar General's customers are generally from the neighborhoods surrounding the stores.  Dollar General's stores are located with the needs of its core customers (low and fixed income households) in mind.

14. Dollar General offers basic every day and household goods, along with a variety of general merchandise at low prices to provide its customers with one-stop shopping opportunities generally in their own neighborhoods.

15. In addition to offering name brand and generic merchandise, Dollar General distributes and markets its own lines of inexpensive household products, which bear the designation "DG." DG lines include "DG Auto," "DG Hardware" "DG Health" and "DG Office."

16. Dollar General's DG Auto line consists of three types of obsolete motor oil: DG SAE 10W-30, DG SAE 10W-40 and DG SAE-30 that fail to protect and can actively damage, modern-day automobiles.

17. Motor oils lubricate the engines of the automobiles driven by individuals. Their main function is to reduce wear on an engine's moving parts. Motor oils also inhibit corrosion, improve sealing and keep engines properly cooled.

18. Motor oils have evolved in parallel with the automobiles they are meant to protect. Institutions like the Society of Automotive Engineers ("SAE") employ rigorous tests to ensure that motor oils meet evolving standards relating to, among other criteria, sludge buildup, temperature volatility, resistance to rust, resistance to foaming, resistance to oil consumption, homogeneity and miscibility.

19. Motor oils designed to protect engines from earlier eras do not protect, and can harm, modern-day engines. Thus, motor oil that would be suitable to use in an

engine manufactured in the 1980's or earlier is not suitable for use in modern-day engines.

20.   Dollar General engages in the unfair, unlawful, deceptive and fraudulent practice of marketing, selling and causing to be manufactured, obsolete motor oil without adequately warning that its product is unsuitable for, and can harm, the vehicles driven by the overwhelming majority of Dollar General's customers (and the public at large).

21.   Dollar General misleads customers by using product placement tactics and misleading product labels which obscure a critical fact from Dollar General's customers:   Dollar General's motor oil is unfit for, and can harm, the vehicles driven by the vast majority, if not all, of its customers.

22.   Dollar General's in-house motor oils use the same or similar SAE nomenclature on the front of its labels (*e.g.*, 10W-30, 10W-40, SAE 30) as do the other mainstream, non-harmful, and actually useful brands of motor oil sold by Dollar General.   Dollar General places its DG brand motor oil next to these brand motor oil products on its shelves.

23.   Additionally, the front label of DG's SAE 10W-30 and SAE 10W-40 motor oils says, "Lubricates and protects your engine."

24.   However, among the small print on the back label of Dollar General's motor oils is the statement that DG SAE 10W-30 and DG SAE 10W-40 are admittedly "not suitable for use in most gasoline powered automotive engines built

after 1988" and "may not provide adequate protection against the build-up of engine sludge" and that DG SAE 30 is admittedly "not suitable for use in most gasoline powered automotive engines built after 1930," and its "use in modern engines may cause unsatisfactory engine performance or equipment harm."

25.   Dollar General conceals this language by rendering it in small font and confining it to the product's back label, which is not visible when the products are on the store shelves.

26.   Dollar General further conceals this language by placing it below a misleading and contradictory message regarding the product.  For the DG SAE 10W-30 and DG SAE 10W-40 products, that message reads: "SAE 10W-30 motor oil is an all-season, multi-viscosity, heavy duty detergent motor oil recommended for gasoline engines in older model cars and trucks.  This oil provides oxidation stability, antiwear performance, and protection against deposits, rust and corrosion."   For the DG SAE 30 product, that message reads: "DG Quality SAE 30 is a non-detergent motor oil designed for use in older engines where consumption may be high and economical lubricants are preferred."

27.   Few, if any, Dollar General customers drive vehicles for which these products are safe, and the use of the term "older" is a relative term that does not inform a reasonable consumer that these motor oils are not safe for cars manufactured within the past *27 years*, or in the case of Dollar General's DG SAE 30, the past *85 years*.

28.   Dollar General further disguises the obsolete and harmful nature of its motor oils with its positioning of these motor oils on its shelves in a misleading manner.  Specifically, Dollar General places similar quantities of its in-house brand motor oils, DG SAE 10W-30, DG SAE 10W-40 and DG SAE 30, none of which is suitable for modern-day automobiles, adjacent to an array of other motor oils which are suitable for modern-day vehicles.

29.   Dollar General places its in-house brand motor oils on the same shelves, in the same or similar quantities, as PEAK, Pennzoil, Castrol and other legitimate motor oils that are suitable for modern-day automobiles.  Each type of motor oil uses the SAE nomenclature on the front, *e.g.*, 10W-40.   The only apparent difference is the price, as Dollar General's motor oils are less expensive than the others.

30.   Defendant's product display conceals the fact that its DG-brand motor oils have an extremely obscure and limited use and are likely to cause damage to the engines of most of its customers' cars.  Defendant's product positioning and the deceptive label on the motor oil are likely to deceive reasonable consumers.

31.   Dollar General also fails to warn its customers adequately of the obsolete nature of DG-branded motor oils or of the dangers DG-branded motor oils pose to the very automobiles its customers are trying to protect by purchasing Dollar General's motor oil.  An adequate warning for Dollar General's obsolete motor oils would be displayed conspicuously and would inform Dollar General's customers

of the appropriate uses, if any, of the various types of Dollar General motor oils. But Dollar General provides its customers with no such conspicuous warnings. Instead, the company buries the aforementioned statements on the back of its products in small type where customers are unlikely to encounter them.

32.   DG SAE 10W-30 bears the following labels on its front (left) and back (right):



The photograph below is a close-up of DG SAE 10W-30's back label, which includes the warnings, "IT IS NOT SUITABLE FOR USE IN MOST GASOLINE POWERED AUTOMOTIVE ENGINES BUILT AFTER 1988" and "IT MAY NOT PROVIDE ADEQUATE PROTECTION AGAINST THE BUILD-UP OF ENGINE SLUDGE":

33. DG SAE 10W-40 bears the following labels on its front (left) and back (right):

The following photograph is a close-up of DG SAE 10W-40's back label, which includes the warnings, "IT IS NOT SUITABLE FOR USE IN MOST GASOLINE POWERED AUTOMOTIVE ENGINES BUILT AFTER 1988" and "IT MAY NOT PROVIDE ADEQUATE PROTECTION AGAINST THE BUILD-UP OF ENGINE SLUDGE":

34. DG SAE 30 bears the following the labels on its front (left) and back (right):

The photograph below is a close-up of DG SAE 30's back label which includes the warnings, "IT IS NOT SUITABLE FOR USE IN MOST GASOLINE POWERED AUTOMOTIVE ENGINES BUILT AFTER 1930" and "USE IN MODERN ENGINES MAY CAUSE UNSATISFACTORY ENGINE PERFORMANCE OR EQUIPMENT HARM":

35. Dollar General's entire line of low-cost motor oil is unsuitable for the modern-day vehicles driven by its customers and has no business being sold by, except that Dollar General is successfully deceiving a sufficient number of customers to make this fraudulent practice worthwhile. It is unfair, unlawful, deceptive and fraudulent for Dollar General to distribute, market, and sell an entire line of motor oil that is unfit for, and presents concrete dangers to, the automobiles driven by the vast majority of its customers.

36. Dollar General knew or should have known that its customers are being deceived by its marketing strategy based on the quantity of its obsolete DG motor oil sold compared to the limited number of automobiles for which these oils are appropriate.

37. California's consumer protection laws, and the consumer protection laws of every other State and the District of Columbia, are designed to protect consumers from this type of false advertising and predatory conduct.

38. Defendant's unfair and deceptive course of conduct victimized all purchasers of Dollar General's motor oil from Dollar General, throughout the country.

39. As a direct and proximate result of Dollar General's deceptive and fraudulent practices, Plaintiff and the Class Members purchased a product they would not have otherwise purchased and have suffered and will continue to suffer economic damages. Indeed, the products are worthless.

40. In addition, many Class Members have sustained damage to their automobiles as a result of the use of Dollar General's DG-branded motor oil and have suffered and will continue to suffer economic damage as a result.

41. Plaintiff therefore brings the statutory and common law claims alleged herein to halt Dollar General's deceptive practices and to obtain compensation for the losses suffered by Plaintiff and all Class Members.

**Unjust Enrichment**

42. Plaintiff and Class Members have conferred substantial benefits on the Defendant by purchasing its useless and harmful motor oil, and Dollar General has consciously and willingly accepted and enjoyed these benefits.

43. Defendant knew or should have known that consumers' payments for its obsolete and harmful motor oil were given and received with the expectation that the motor oil would lubricate and protect consumers' engines and would not be harmful to their vehicles.

44.   Because of the fraudulent misrepresentations, concealments, and other wrongful activities described herein, Defendant has been unjustly enriched by its wrongful receipt of Plaintiff's and Class Members' monies.

45.   As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiff and Class Members have suffered damages in an amount to be determined at trial.

46.   Defendant should be required to account for and disgorge all monies, profits and gains which it has obtained or will unjustly obtain in the future at the expense of consumers.

## CLASS ACTION ALLEGATIONS

47.   Plaintiff brings this class action pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of himself and all members of the following Class:

> **All persons in the United States who purchased Defendant's DG-branded motor oil, DG SAE 10W-30, DG SAE 10W-40 and/or DG SAE 30, for personal use and not for re-sale, since December 2011.**

48.   Plaintiff also brings this class action pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of himself and all members of the following Sub-Class:

> **All persons in the State of California who purchased Defendant's DG-branded motor oil, DG SAE 10W-30, DG SAE 10W-40 and/or DG SAE 30, for personal use and not for re-sale, since December 2011.**

49. Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class and Sub-Class may be expanded or narrowed by amendment or amended complaint.

50. Specifically excluded from the proposed Class and Sub-Class are Dollar General, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, successors, assigns, or other persons or entities related to or affiliated with Dollar General and/or its officers and/or directors, or any of them. Also excluded from the proposed Class and Sub-Class are the Court, the Court's immediate family and Court staff.

## FRCP 23(a) Factors

51. **Numerosity.** Membership in the Class and Sub-Class is so numerous that separate joinder of each member is impracticable. The precise number of Class Members is unknown at this time but can be readily determined from Defendant's records. Plaintiff reasonably estimates that there are hundreds of thousands of persons in the Class and tens of thousands of persons in the Sub-Class.

52. **Adequacy of Representation.** Plaintiff will fairly and adequately represent and protect the interests of the members of the Class and Sub-Class. Plaintiff has retained counsel highly experienced in complex consumer class action litigation and intends to prosecute this action vigorously. Plaintiff is a member of the Class and Sub-Class described herein and does not have interests antagonistic to, or in conflict with, the other members of the Class and Sub-Class.

53. **Typicality.** Plaintiff's claims are typical of the claims of the members of the Class and Sub-Class. Plaintiff and all members of the Class and Sub-Class purchased obsolete, harmful, deceptively labeled and deceptively marketed motor oil from Dollar General and were subjected to Defendant's common course of conduct.

54. **Existence and Predominance of Common Questions of Law and Fact.** There are numerous and substantial questions of law and fact common to all Class Members sufficient to satisfy Rule 23(a), and that control this litigation and predominate over any individual issues for purposes of Rule 23(b)(3). Included within the common questions are:

    a) The amount of Defendant's in-house brand motor oil it sold relative to the other brands of oil on its shelves;

    b) The amount of Defendant's in-house brand motor oil it sold relative to the limited number of automobiles for which these motor oils are appropriate;

    c) Whether Defendant studied the effect of its product placement on its shelves;

    d) Whether Defendant studied or tested its label and the effect of its labels on consumers' perceptions;

    e) Whether Defendant studied the susceptibility of consumers;

f) The cost to Defendant to manufacture, distribute, market and sell its DG-branded motor oil compared to the revenue it received from its sales;

g) Whether Defendant misrepresented the safety and suitability of its DG-branded motor oil sold at its stores nationwide;

h) Whether Defendant's conduct of placing the obsolete Dollar General motor oil next to legitimate, useful motor oil is likely to deceive reasonable consumers;

i) Whether the warnings provided on the labels of Dollar General's motor oil were adequate;

j) Whether Defendant's conduct of hiding the warnings on the back label is likely to deceive reasonable consumers;

k) Whether Defendant deliberately misrepresented or failed to disclose material facts to Plaintiff and Class Members regarding the obsolete and harmful nature of its DG-branded motor oil;

l) Whether Dollar General's conduct, as alleged herein, is unlawful, unfair, or fraudulent under California's Unfair Competition Law, California Business & Professions Code §17200, *et seq*.;

m) Whether Dollar General's conduct, as alleged herein, violates California's Consumers Legal Remedies Act, California Civil Code § 1750, *et seq*.;

n) Whether Dollar General's conduct, as alleged herein, violates California's False Advertising Law, California Business and Professions Code § 17500, *et. seq.*;

o) Whether the Class is entitled to injunctive relief prohibiting the wrongful practices alleged herein and enjoining such practices in the future;

p) Whether Plaintiff and members of the Class are entitled to restitution;

q) Whether compensatory, consequential and punitive damages ought to be awarded to Plaintiff and Class Members;

r) Whether Plaintiff and Class Members are entitled to attorneys' fees and expenses, and in what amount;

s) The proper method for calculating damages and restitution classwide; and

t) Whether Plaintiff and Class Members are entitled to declaratory and/or other equitable relief.

**FRCP 23(b)(2)**

55. Defendant has acted on grounds generally applicable to the entire Class and Sub-Class, thereby making final injunctive relief and/or corresponding declaratory relief appropriate with respect to the Classes as a whole. The prosecution of separate actions by individual Class Members would create the risk

of inconsistent or varying adjudications with respect to individual member of the Classes that would establish incompatible standards of conduct for Defendant.

56. Injunctive relief is necessary to prevent further fraudulent and unfair business practices by Defendant. Money damages alone will not afford adequate and complete relief, and injunctive relief is necessary to restrain Defendant from continuing to commit its deceptive, fraudulent and unfair policies.

**FRCP 23(b)(3)**

57. **Common Issues Predominate:** As set forth in detail herein above, common issues of fact and law predominate because all of Plaintiff's UCL, FAL CLRA, and warranty claims are based on a deceptive common course of conduct. Whether Dollar General's conduct is likely to deceive reasonable consumers and breaches the implied warranties of merchantability and fitness for a particular purpose is common to all members of the Classes and are the predominate issues, and Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims

58. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

a) Given the size of the claims of individual Class Members, as well as the resources of Dollar General, few Class Members, if any, could afford to seek legal redress individually for the wrongs alleged herein;

b) This action will permit an orderly and expeditious administration of the claims of Class Members, will foster economies of time, effort and expense and will ensure uniformity of decisions;

c) Any interest of Class Members in individually controlling the prosecution of separate actions is not practical, creates the potential for inconsistent or contradictory judgments and would create a burden on the court system;

d) Without a class action, Class Members will continue to suffer damages, Defendant's violations of law will proceed without remedy, and Defendant will continue to reap and retain the substantial proceeds derived from its wrongful and unlawful conduct.  Plaintiff and Class Members have suffered damages as a result of Defendant's unlawful and unfair conduct.  This action presents no difficulties that will impede its management by the Court as a class action.

59.  **Notice to the Class:** Notice can be accomplished by publication for most Class Members, and direct notice may be possible for those who are members of a Dollar General rewards program or for whom Dollar General has specific information.  Further, publication notice can be easily targeted to Dollar General customers because Defendant only sells the subject motor oil in its own stores.

60. The Class members have suffered economic harm and suffered injury in fact as a result of Dollar General's misconduct, in that each member purchased Dollar General's useless and harmful motor oil.

## CLAIMS FOR RELIEF

61. Based on the foregoing allegations, Plaintiff's claims for relief include the following:

## FIRST CAUSE OF ACTION
**VIOLATION OF CALIFORNIA CIVIL CODE § 1750, *et seq*.**
***California Civil Code* §1750, *et seq.***
**(on behalf of the California Sub-Class)**

62. Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

63. Plaintiff brings this claim under *Civil Code* § 1750, *et seq.*, the CLRA, on behalf of himself and the Class, who were subject to Defendant's above-described unfair and deceptive conduct.

64. As alleged hereinabove, Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and lost money or property as a result of Defendant's actions as set forth herein.

65. Plaintiff and members of the California Sub-Class are consumers as defined by California Civil Code section 1761(d). The DG-branded motor oils are goods within the meaning of California Civil Code section 1761(a).

66.  Plaintiff is concurrently filing the declaration of venue required by *Civil Code* § 1780(d) with this complaint.  This cause of action is asserted on behalf of a subclass of the putative California Sub-Class, comprised of those members who purchased DG-branded motor oil within three (3) years of the commencement of this action.  Plaintiff and members of the Sub-Class are individuals who have purchased the goods (the DG-branded motor oil) for personal use.

67.  Specifically, as described herein, Dollar General made the following representations, expressly or by implication to Plaintiff and Sub-Class Members about the deceptively labeled motor oil: (i) that Dollar General's DG-branded motor oil was suitable for use in its customers' automobiles; (ii) that Dollar General's DG-branded motor oil was safe to use in its customers' automobiles; and (iii) that Dollar General's DG-branded motor oil was of similar quality as the other motor oils beside which Dollar General's DG-branded motor oils were positioned on the shelves in Defendant's stores.

68.  These representations were materially misleading.

69.  Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code section 1770(a) in transactions with Plaintiff and members of the Sub-Class, which were intended to result in, and did result in, the sale of DG-branded motor oils:

    a.    By representing that DG-branded motor oils "lubricate[] and protect[] your engine," placing the DG-branded motor oils on

shelves next to legitimate motor oils intended for use in modern day vehicles, and failing to adequately warn consumers of the harm their products can cause, Defendant is representing that DG-branded motor oils have characteristics, uses or benefits which they do not have, in violation of Civ. Code § 1770(a)(5);

b.   By representing that DG-branded motor oils "lubricate[] and protect[] your engine,"  and placing the DG-branded motor oils on shelves next to legitimate motor oils intended for use in modern day vehicles, and failing to adequately warn consumers of the harm their products can cause, Defendant is representing that DG-branded motor oils are of a particular standard, quality, or grade, when they are of another, in violation of Civ. Code § 1770(a)(7);

c.   By representing that DG-branded motor oils "lubricate[] and protect[] your engine," and placing the DG-branded motor oils on shelves next to legitimate motor oils intended for use in modern day vehicles, and failing to adequately warn consumers of the harm their products can cause, Defendant is "[a]dvertising goods... with intent not to sell them as advertised," in violation of Civ. C. 1770(a)(9); and,

d.   By representing that DG-branded motor oils "lubricate[] and protect[] your engine," and placing the DG-branded motor oils on

shelves next to legitimate motor oils intended for use in modern day vehicles, and failing to adequately warn consumers of the harm their products can cause, Defendant has represented that the products have "been supplied in accordance with a previous representation when it has not," in violation of Civ. C. 1770(a)(16).

70. Defendant violated the CRLA by failing to adequately warn Plaintiff and members of the Sub-Class that DG-branded motor oils are not suitable for, and can harm, most vehicles on the road.

71. Defendant's actions as described herein were done with conscious disregard of Plaintiff's rights, and Defendant was wanton and malicious in its concealment of the same.

72. Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA because Defendant continues to sell the obsolete oil without adequate warnings and represent the DG-branded motor oils have characteristics and abilities which the products do not have, and has thus injured and continues to injure Plaintiff and the Sub-Class.

73. Plaintiff and other members of the putative Sub-Class have suffered injury in fact and have lost money as a result of Defendant's deceptive conduct. Plaintiff would not have purchased the DG-branded motor oil if he had known it was obsolete and not suitable for his vehicle, was not capable of protecting or lubricating his vehicle's engine, and could harm his vehicle.

74. Pursuant to *Civil Code* § 1780(a), Plaintiff seeks injunctive relief in the form of enjoining Defendant from (1) selling obsolete oil; (2) expressly or impliedly representing to current and potential purchasers of the DG-branded motor oils that the product is suitable for use in modern day vehicles manufactured after 1988, or in the case of SAE-30, after 1930; (3) providing inadequate warnings as to the harm the oil can cause. Plaintiff also seeks injunctive relief in the form of corrective advertising requiring Defendant to disseminate truthful, adequate disclosures and warnings about the actual uses (to the extent there are any) of the DG-branded motor oils.

75. Plaintiff and members of the Sub-Class shall be irreparably harmed if such an order is not granted.

76. On December 17, 2015, Plaintiff sent Defendant notice advising Defendant it violated and continues to violate, Section 1770 of the CLRA (the "Notice") concurrently with the filing of this complaint. The Notice complies in all respects with Section 1782 of the CLRA. Plaintiff sent the Notice by Certified U.S. Mail, return-receipt requested to Defendant at Defendant's principal place of business. Plaintiff's Notice advised Defendant they must correct, repair, replace or otherwise rectify its conduct and the product alleged to be in violation of Section 1770, including that Defendant cease falsely and misleadingly advertising its DG brand motor oil, provide corrective advertising and provide restitution to its customers who paid money to Defendant for said products. However, Plaintiff

advised Defendant that if it fails to respond to Plaintiff's demand within thirty (30) days of receipt of this notice, pursuant to Sections 1782(a) and (d) of the CLRA, Plaintiff will amend this complaint to seek restitution, actual damages and punitive damages.

**SECOND CAUSE OF ACTION**
**Violations of False and Misleading Advertising Law (FAL)**
***California Business and Professions Code* §17500, *et seq.***
**(on behalf of the California Sub-Class)**

77. Plaintiff herby incorporates by reference each of the proceeding allegations as if fully set forth herein.

78. At all times relevant hereto, Defendant was a "person" as that term is defined in *California Business and Professions Code* §17506.

79. *California Business and Professions Code* §17500 provides that "[i]t is unlawful for any person, firm, corporation or association with intent directly or indirectly to dispose of . . . personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state . . . any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ."

80. In its advertising for the obsolete DG-branded motor oil, Defendant makes false and misleading statements the product will "lubricate and protect your engine," deceptively places the products next to legitimate motor oils, and

fails to conspicuously or adequately warn consumers that the DG-branded motor oil is not suitable for most vehicles and can harm vehicles manufactured after 1988 (or 1930).

81. Defendant engaged in the deceptive conduct alleged hereinabove, which included deceptive and untrue representations regarding DG-branded motor oil made to induce the public to purchase the products.

82. Defendant's act of untrue and misleading advertising presents a continuing threat to members of the public because their advertisements induce consumers to purchase its motor oil, which are unsafe and not suitable for use in their automobiles, instead of other motor oils.

83. By its actions, Dollar General is disseminating uniform advertising concerning its products and services, which by its nature is unfair, deceptive, untrue, or misleading within the meaning of the *California Business and Professions Code* §17500, *et seq*. Such advertisements are likely to deceive, and continue to deceive, the consuming public for the reasons detailed above.

84. Defendant is aware that its advertising is false in that Defendant knows DG-branded motor oil is not suitable for most vehicles on the road today, is not capable of protecting or lubricating the engines of modern day vehicles and that it does not adequately warn consumers about the harmful effects of the product.

85. As a result of the violations of California law described above, Defendant has been, and will be, unjustly enriched by receipt of millions of dollars in monies

received from customers who have purchased and will continue to purchase obsolete and harmful motor oil from its stores which advertise and/or otherwise market in this State and this Country, and which materially misrepresent the quality of its motor oils.

86.  These misrepresentations and non-disclosures by Dollar General of the material facts detailed above constitute false and misleading advertising and therefore constitute a violation of *California Business and Professions Code* §17500, *et seq.*

87.  Plaintiff and other members of the putative Sub-Class have suffered injury in fact and have lost money as a result of Defendant's deceptive conduct.  Plaintiff would not have purchased the DG-branded motor oil if he had known it was obsolete and not suitable for his vehicle, was not capable of protecting or lubricating his vehicle's engine, and could harm his vehicle.

88.  Pursuant to *Business & Professions Code* §§ 17203 and 17535, Plaintiff and the members of the Sub-Class seek an order of this Court enjoining Defendant from engaging in the false advertising alleged herein in connection with the marketing and sale of DG-branded motor oil. Additionally, Plaintiff requests the money wrongfully acquired by Defendant by means of the unfair competition and false advertising alleged herein, and will request, in an amended complaint, an order awarding Plaintiff and the Sub-Class restitution.

**THIRD CAUSE OF ACTION**
**Violations of the Unfair Competition Law (UCL)**
**Unfair and Fraudulent Prongs**
***California Business and Profession Code* §17200, *et seq.***
**(on behalf of the California Sub-Class)**

89. Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

90. As alleged hereinabove, Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of Defendant's actions as set forth herein. Specifically, prior to the filing of this action, Plaintiff purchased DG-branded motor oil for his own personal use. In so doing, he relied upon the false representations referenced above and believed the DG-branded motor oil was legitimate and suitable for use in his vehicle, and was not aware that it could actually harm his vehicle.

91. Defendant is aware that its conduct is likely to deceive reasonable consumers.

92. The misrepresentations, conduct and inadequate disclosures by Defendant are material and constitute an unfair and fraudulent business practice within the meaning of *Business & Professions Code* § 17200, *et seq.*

93. Defendant's business practices, as alleged herein, are unfair because: (1) the injury to the consumer is substantial; (2) the injury is not outweighed by any countervailing benefits to consumers or competition; and (3) consumers could not

reasonably have avoided the information because Defendant intentionally mislead the consuming public by means of the claims, inadequate warnings and conduct with respect to DG-branded motor oil as set forth herein.

94. Defendant's business practices as alleged herein are fraudulent because they are likely to deceive customers into believing that DG-branded motor oil is actually useful for the purpose for which it is sold (to protect and lubricate vehicle engines), and it knows the warnings in small print on the back of products underneath misleading information about the product characteristics will deceive consumers into purchasing oil that has no use to them, is worthless, and which can actually harm their vehicles.

95. In addition, Defendant's use of various forms of advertising media to advertise, call attention to or give publicity to the sale of goods or merchandise which are not as represented constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of *Business & Professions Code* § 17200, *et seq*.

96. Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct of unfair competition since Defendant is marketing and selling DG-motor oil in a manner likely to deceive the public.

97. Defendant has peddled, and continues to peddle, its misrepresentations through a nationwide advertising campaign.

98.   There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

99.   Plaintiff and the putative class members were misled into purchasing DG-motor oil by Defendant's deceptive and fraudulent conduct as alleged hereinabove.

100.   Plaintiff and other putative Sub-Class Members were misled, and, because the misrepresentations and omissions were uniform and material, presumably believed that DG-motor oil was capable of lubricating and protecting modern day vehicle engines and would not harm them.

101.   Pursuant to *Business & Professions Code* § 17203, Plaintiff and the members of the Sub-Class seek an order of this Court enjoining Defendant from engaging in the unfair competition  alleged herein and ordering corrective advertising in connection with the sale of DG-motor oil.  Additionally, Plaintiff will amend this complaint to request an order awarding Plaintiff and theSub-Class restitution of the money wrongfully acquired by Defendant by means of the unfair competition alleged herein.

102.   Plaintiff and other members of the putative Sub-Class have suffered injury in fact and have lost money as a result of Defendant's deceptive conduct. Plaintiff would not have purchased the DG-branded motor oil if he had known it was obsolete and not suitable for his vehicle, was not capable of protecting or lubricating his vehicle's engine, and could harm his vehicle.

**FOURTH CAUSE OF ACTION**
**Violations of the Unfair Competition Law (UCL)**
**Unlawful Conduct Prong**
***California Business and Profession Code* §17200, *et seq.***
**(on behalf of the California Sub-Class)**

103. Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

104. The actions of Defendant, as alleged herein, constitute illegal and unlawful practices committed in violation of *Business & Professions Code* § 17200, *et seq.*

105. Defendant has unlawfully marketed, advertised and sold its DG-branded motor oil because: (1) it is violating sections 1770(a)(5), 1770(a)(7), and 1770(a)(9) of the CLRA, *Civil Code* § 1750, *et seq.*; (2) it is violating *Business & Professions Code* § 17500; and it is violating California *Civil Code* sections 1792 & 1791.1(a).

106. Plaintiff and other putative class members were misled, and, because the misrepresentations and omissions were uniform and material, presumably believed that DG-motor oil was capable of lubricating and protecting modern day vehicle engines and would not harm them.

107. Pursuant to *Business & Professions Code* § 17203, Plaintiff and the members of the Sub-Class seek an order of this Court enjoining Defendant from engaging in the unfair competition alleged herein and corrective advertising in

connection with the sale of DG-motor oil. Additionally, Plaintiff will amend this complaint to request an order awarding Plaintiff and the Sub-Class restitution of the money wrongfully acquired by Defendant by means of the unfair competition alleged herein.

108. Plaintiff and other members of the putative Sub-Class have suffered injury in fact and have lost money as a result of Defendant's deceptive conduct. Plaintiff would not have purchased the DG-branded motor oil if he had known it was obsolete and not suitable for his vehicle, was not capable of protecting or lubricating his vehicle's engine, and could harm his vehicle.

## FIFTH CAUSE OF ACTION

**Violation of the Song-Beverly Consumer Warranty Act for Breach of Implied Warranty of Merchantability, §§ 1792 and 1791.1(a) of the California Civil Code**

**(on behalf of the California Sub-Class)**

109. Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

110. Plaintiff and members of the California Sub-Class are "retail buyers" within the meaning of §1791(b) of the California Civil Code.

111. DG SAE 10W-30, DG SAE 10W-40 and DG SAE 30 are each a "consumer good" within the meaning of §1791(a) of the California Civil Code.

112. Dollar General is a "distributor", "manufacturer", and/or "retailer" of DG SAE 10W-30, DG SAE 10W-40 and DG SAE 30 within the meaning of §1791(e), (j), and (l) of the California Civil Code.

113. Dollar General impliedly warranted to Plaintiff Sub-Class Members that DG SAE 10W-30, DG SAE 10W-40 and DG SAE 30 were "merchantable" as automotive motor oil within the meaning of §§ 1791.1(a) and 1792 of the California Civil Code.

114. Dollar General breached the implied warranty of merchantability to Plaintiff and Sub- Class Members because DG SAE 10W-30, DG SAE 10W-40 and DG SAE 30 (i) are not fit for the ordinary purpose for which they are used; (ii) are not adequately contained, packaged and labeled (*i.e.*, it lacked a sufficiently conspicuous caution label about the risk posed by the motor oil when used according to the directions on the product packaging); and (iii) do not conform to the promises or affirmations of fact made on the container or label (*i.e.*, that it was at all suitable to use).

115. Dollar General's failure to warn Plaintiff and Sub-Class Members adequately about the defective and unsafe quality of the product was willful.

116. As a proximate result of Dollar General's breach of the implied warranty of merchantability, Plaintiff and Sub-Class Members sustained damages including but not limited to the receipt of goods they would not have otherwise purchased and which have or are likely to cause damage to their automobiles if used in the manner intended.

117. Pursuant to §§ 1791.1(d) and 1794 of the California Civil Code, Plaintiff and the members of the California Sub-Class are entitled to damages, civil

penalties and other legal and equitable relief including, a right of reimbursement, as well as costs, expenses and attorneys' fees. Plaintiff will amend this complaint to seek damages.

**SIXTH CAUSE OF ACTION**

**Violations of Song-Beverly Consumer Warranty Act for Breach of Implied Warranty of Fitness, §§ 1792.1 and 1791.1(b) of the California Civil Code (on behalf of the California Sub-Class)**

118. Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

119. Plaintiff and members of the California Sub-Class are "retail buyers" within the meaning of §1791(b) of the California Civil Code.

120. DG SAE 10W-30, DG SAE 10W-40 and DG SAE 30 are each a "consumer good" within the meaning of §1791(a) of the California Civil Code.

121. Dollar General is a "distributor", "manufacturer", and/or "retailer" of DG SAE 10W-30, DG SAE 10W-40 and DG SAE 30 within the meaning of §1791(e), (j), and (l) of the California Civil Code.

122. Defendant specifically marketed DG SAE 10W-30, DG SAE 10W-40 and DG SAE 30 as motor oils that could be used in its customer's automobiles. At the time of the sale of the product, Defendants knew or should have known that Plaintiff and members of the California Sub-Class would (i) use DG SAE 10W-30, DG SAE 10W-40 and DG SAE 30 as motor oil and be exposed to these products'

potentially harmful qualities and (ii) reasonably rely on Dollar General's skill or judgment to select or furnish suitable goods.

123.  Plaintiff and members of the California Sub-Class did in fact purchase DG SAE 10W-30, DG SAE 10W-40 and DG SAE 30 with the particular purpose of using them as motor oil for their automobiles.

124.  Plaintiff and members of the California Sub-Class did in fact reasonably rely on Dollar General's skill or judgment to furnish suitable goods.

125.  By manufacturing, marketing, and distributing such products without an adequate warning, Dollar General breached its implied warranty of fitness for a particular purpose and is liable to Plaintiff and the California Sub-Class.

126.  Dollar General's failure to warn Plaintiff and members of the California Sub-Class adequately about the defective and unsafe quality of the product was willful.

127.  As a proximate result of Dollar General's breach of the implied warranty of fitness, Plaintiff and members of the California Sub-Class sustained damages, including but not limited to the receipt of goods whose they would not have otherwise purchased and which have or are likely to cause damage to their automobiles if used in the manner intended.

128. Pursuant to §§ 1791.1(d) and 1794 of the California Civil Code, Plaintiff and members of the California Sub-Class are entitled to and hereby seek damages, civil penalties and other legal and equitable relief including, a right of

reimbursement, as well as costs, expenses and attorneys' fees under this Cause of Action only.

**SEVENTH CAUSE OF ACTION**
**Breach of Implied Warranty of Merchantability**
**(on behalf of the Class and Sub-Class)**

129. Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

130. Beginning at an exact date unknown to Plaintiff, but at least since four years prior to the filing date of this action, and as set forth above, Defendant represented to consumers, including Plaintiff and Class Members, by labeling/packaging and other means, that DG SAE 10W-30, DG SAE 10W-40, and DG SAE 30 are safe and suitable for use in the automobiles driven by Dollar General's customers. Plaintiff and Class Members bought those goods from the Defendant.

131. Defendant was a merchant with respect to goods of the kind which were sold to Plaintiff and Class Members, and there was in the sale to Plaintiff and Class Members an implied warranty that those goods were merchantable.

132. However, Defendant breached that warranty implied in the contract for the sale of goods in that Dollar General's DG-branded motor oil is in fact not suitable for use in the vehicles driven by the vast majority, if any, of Dollar General's customers, as set forth in greater detail above.

133. As a result thereof Plaintiff and Class Members did not receive goods as impliedly warranted by Defendant to be merchantable.

134. As a proximate result of this breach of warranty by Defendant, Plaintiff and Class Members have been damaged. Plaintiff will amend this complaint to seek damages in an amount to be determined at trial.

**EIGHTH CAUSE OF ACTION**
**Breach of Implied Warranty of Fitness for a Particular Purpose**
**(on behalf of the Class and Sub-Class)**

135. Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

136. Beginning at an exact date unknown to Plaintiff, but at least since four years prior to the filing date of this action, and as set forth above, Defendant sold its DG-branded motor oils to Plaintiff and Class Members, who bought those goods from Defendant in reliance on Defendant's skill and judgment.

137. At the time of sale, Defendant had reason to know the particular purpose for which the goods were required, and that Plaintiff and Class Members were relying on Defendant's skill and judgment to select and furnish suitable goods so that there was an implied warranty that the goods were fit for this purpose.

138. However, Defendant breached the warranty implied at the time of sale in that Plaintiff and Class Members did not receive suitable goods, and the goods were not fit for the particular purpose for which they were required in that Dollar General's DG-branded motor oils are not safe or suitable for use in the vast

majority, if any, of vehicles driven by Dollar General's customers, as set forth in detail above.

139. As a proximate result of this breach of warranty by Defendant, Plaintiff and Class Members have been damaged. Plaintiff will amend this complaint to seek damages in an amount to be determined at trial.

## DEMAND/PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of himself and members of the Class and Sub-Class defined herein, prays for judgment and relief as follows:

A. An order certifying that this action may be maintained as a class action;

B. Compensatory damages as to the Sixth Cause of Action only;

C. Punitive Damages as to the Sixth Cause of Action only;

D. Restitution and disgorgement of the unlawful profits collected by the Defendant;

E. An order providing for declaratory and/or injunctive relief:

1. Declaring that Defendant must provide accurate representations of the quality of the motor oil sold at its stores;
2. Enjoining Defendant from continuing the deceptive practices alleged herein; and
3. Granting other extraordinary equitable and/or injunctive relief as permitted by law, including specific performance, reformation and imposition of a constructive trust;

F. Prejudgment and post-judgment interest at the prevailing legal rate;

G. Plaintiff's attorneys' fees and costs of suit; and

H. Such other and further relief as the Court may deem necessary and appropriate.

**JURY DEMAND**

Plaintiff and Class Members, pursuant to Fed. R. Civ. P. 38(b), hereby demand trial by jury on all issues so triable.

DATED: December 17, 2015

**MILSTEIN ADELMAN, LLP**

/s/ Gillian L. Wade
Gillian L. Wade
Sara D. Avila
10250 Constellation Boulevard
Suite 1400
Los Angeles, CA 90067
Telephone: (310) 396-9600
Facsimile: (310) 39609635

**KANNER & WHITELEY, L.L.C.**
Allan Kanner, Esq.
Conlee Whiteley, Esq.
Cynthia St. Amant, Esq.
701 Camp Street
New Orleans, LA 70130
Telephone: (504) 524-5777
Facsimile: (504) 524-5763

*Attorneys for Plaintiff*